**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Ray Miguel, et al., | No. CV-15-00592-TUC-DCB |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

## FINDINGS OF FACT

To the extent these Findings of Fact are also deemed to be Conclusions of Law, they are hereby incorporated into the Conclusions of Law that follow.

1. The plaintiffs appear in court having filed a Federal Tort Claim Act (FTCA) suit seeking damages for a battery committed by Border Patrol Agent Joseph Spann, pursuant to 28 U.S.C §1346(b)(1).

2. On March 31, 2014, at about 12:15 a.m., Agent Spann was on foot outside of his marked Border Patrol pickup truck, standing between the open driver's side door and the driver's seat, in a dirt area at the intersection of Federal Route 19 and San Miguel East. He was facing west towards Federal Route 19 and holding a GPS device.

3. There was no moon light. There were neither street lights nor any lights that illuminated the scene except for vehicle lights.

4. Agent Spann had parked his vehicle perpendicular to Federal Route 19 with

its headlights directed across the highway toward the community center building in the small, spread out, village of San Miguel and approximately 40 to 50 feet from each roadway, with a small mesquite tree within approximately 12 feet from the driver's side door.

5. Shawn Miguel, Amon Chavez and Raymus Listo, the occupants of Miguel's double cab pickup truck, Dodge Ram, were intoxicated from malt liquor and had gone for a ride.

6. Miguel drove to the community center and either pulled into the parking area in front of the community center building which was closed and U-turned back onto Federal Route 19 or was just proceeding south on Federal Route 19, but either way he turned left from Federal Route 19 towards Agent Spann's parked vehicle, with the headlights of Spann's parked vehicle shining directly at him.

7. Agent Spann saw Miguel's truck coming southbound on Federal Route 19 had slowed down or come to a stop almost directly in front of where he was facing.

8. Agent Spann heard the engine of the Dodge Ram bog down, noticed its lights dim, and saw it turn left off Federal Route 19 and come towards him.

9. Miguel drove to the right of Agent Spann's parked vehicle, first, towards the small mesquite tree and then to avoid hitting the tree he veered towards Agent Spann's parked vehicle, and the driver's side front bumper of Miguel's truck clipped the door and rear panel of Spann's vehicle as Miguel stopped his truck.

10. As Miguel's vehicle approached, Agent Spann jumped into his vehicle's driver seat moments before the Dodge Ram collided with his driver's side door. The collision pressed Agent Spann's driver's side door inward, trapping his leg in the doorway and bruising it just above the ankle causing Agent Spann to believe his leg was broken.

11. Miguel immediately stopped his truck. At rest, his driver's window was directly across from Agent Spann's driver's window.

12. Miguel made no attempt to leave his stopped position. Agent Spann did not

1 hear Miguel's engine change idle or note any behavior indicating any attempt to drive
2 away or for anyone to get out of Miguel's truck.

13. Agent Spann did not think that the Dodge pickup was going to drive away.

14. Agent Spann did not roll his window down or make any gesture indicating a desire to talk with the driver or occupants of Miguel's vehicle.

15. Agent Spann did not know any information about the occupants of Miguel's vehicle, including the number of passengers, if any.

16. Agent Spann did know that it was highly likely that the Dodge pickup was occupied by Tohono O'Odham persons.

17. Fearing an assault, Agent Spann almost immediately began firing his H&K P2000 standard issue service pistol using 0.40 caliber hollow point bullets and aimed at the presumed location of the driver.

18. Agent Spann continued firing his weapon until he had fired seven shots into the vehicle containing an unknown number of persons.

19. The seventh shot was made as the Miguel truck was driving away and after Agent Spann determined that there were three occupants. The last bullet lodged in the sun visor above the driver's head.

20. Six bullets struck the occupants. Miguel was struck by a bullet that went through the flesh of his upper right shoulder and a bullet that entered the left side of his face but did not exit. The 0.40 caliber bullet that struck his face transferred all its force to his upper mouth structures. Four bullets entirely or partially struck the back of Amon Chavez fracturing his ribs and fracturing the transverse processes that are next to his spinal cord.

21. The firing of the bullets by Agent Spann was not justified under Arizona law because a reasonable person would not have believed that deadly physical force was immediately necessary to protect himself against the occupants of the stationary vehicle involved in the minor collision. At the time of the shooting, the occupants of Miguel's truck were neither using nor attempting to use deadly physical force.

22. The Plaintiff's intoxication contributed more than 50% to the vehicle collision, but as a result of being under the influence Miguel was not 50% responsible for the shooting. The shooting was unjustified.

23. The plaintiffs have each suffered permanent injuries and disfigurement. They each have incurred medical expenses. They each have suffered pain both physically and emotionally. The bullets or bullet fragments remain in their respective bodies. There is no significant, continuing disability or impairment.

24. The defendant has not justified his shooting and, therefore, the defendant is responsible for the totality of plaintiff's damages.

25. The medical bills reasonably incurred by Shawn Miguel are $86,028.21. He is awarded special damages in that amount. Additionally, he is awarded general damages of $100,000 for his pain, suffering, and permanent injuries.

26. The medical bills reasonably incurred by Amon Chavez are $27,803.25. He is awarded special damages in that amount. Additionally, he is awarded general damages of $50,000 for his pain, suffering, and permanent injuries.

## CONCLUSIONS OF LAW

To the extent any of the Findings of Fact contain or include any Conclusions of Law, said Findings of Fact are incorporated herein by reference.

1. This is an action for battery brought under the Federal Tort Claims Act (FTCA) 28 U.S.C. §§ 1346(b), 2671-2680.

2. Jurisdiction lies in this Court pursuant to 42 U.S.C. § 233(g) and 28 U.S.C. § 1346(b).

3. The FTCA is a limited waiver of sovereign immunity subject to substantive exceptions, for suits against the United States for money damages on claims sounding in tort that are based on the conduct of federal employees in the scope of their employment. *United States v. Orleans*, 425 U.S. 807, 813-14 (1976).

4. In a FTCA case, the question is whether the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the

act or omission occurred," 28 U.S.C. 1346(b)(1), which here is Arizona.

5. Under Arizona law, the intentional use of physical force by a law enforcement officer is an intentional tort, battery claim, *Ryan v. Napier*, 2018 WL 4016372 *1 (Ariz. August 23, 2018). Therefore, the Plaintiffs' negligence claims are dismissed.

6. Battery requires proof that the Defendant intentionally caused a harmful or offensive contact with the Plaintiff to occur; intent to do physical harm is not an element of assault with a deadly weapon when a firearm is used. *Johnson v. Pankratz*, 2 P.3d 1266, 1268-1270 (Ariz. App. 2000); *State v. Dillon*, 547 P.2d 491, 493 (Ariz. App. 1976).

7. The burden of proof is on the Plaintiffs to prove the battery, but here the issue is whether Agent Spann acted in self-defense respecting the battery under A.R.S. § 13-404, which provides: "a person is justified in threatening or using physical force against another when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force."

8. Under A.R.S. § 13-405, a person is justified in using deadly physical force against another: if its justified under 13-404 and "when and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force. A person has no duty to retreat before threatening or using deadly physical force pursuant to this section if the person is in a place where the person may legally be and is not engaged in an unlawful act."

9. The burden of proof is on Agent Spann to prove the self-defense justification. *Ryan v. Napier*, 2018 WL 4016372 *1.

10. Justification under A.R.S. § 13-411 does not apply because it justifies the use of deadly physical force only "to the extent a person reasonably believes such force is immediately necessary to prevent the other's commission of aggravated assault." Here, the Plaintiffs had completed the left turn, hit Defendant's Border Patrol vehicle, and

come to a stop.

11. The Court does not need to reach the question of whether to exercise its discretion as the trier of fact under A.R.S. § 12-711 to bar Miguel's recovery because he was under the influence of alcohol or drugs. The Court finds the shooting was not justified. The Court also finds that as a result of being under the influence, Miguel did not contribute at least 50 percent to the cause of the shooting.

12. The Court determines that the full amount of money that will reasonably and fairly compensate Shawn Ray Miguel is $186,028.21.

13. The Court determines that the full amount of money that will reasonably and fairly compensate Amon Chavez is $77,803.25.

**Accordingly**,

**IT IS ORDERED** that Judgment shall be entered for Plaintiff Shawn Ray Miguel in the total amount of $186,028.21.

**IT IS FURTHER ORDERED** that Judgment shall be entered for Plaintiff Amon Chavez in the total amount of $77,803.25.

Dated this 21st day of September, 2018.

Honorable David C. Bury
United States District Judge